**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

Case No. 1:20-cv-23235

LEZER CORP.
a Delaware corporation,

        Plaintiff,

    v.

NOBLE PARTNERS LLC,
a Maine limited liability company, d/b/a
NOBLE MEDICAL SUPPLY;
SEAN GRADY, an individual,

        Defendants.

_____/

**COMPLAINT**

Plaintiff, LEZER CORP, a Delaware corporation ("Lezer" or "Plaintiff"), by and through its undersigned attorneys, hereby sues Defendants, NOBLE PARTNERS LLC, a Maine limited liability company d/b/a NOBLE MEDICAL SUPPLY ("Noble"), and SEAN GRADY ("Grady"), an individual residing in the state of Maine (together, "Defendants"), states and alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.    Lezer is a corporation incorporated in the state of Delaware, with a principal place of business located at 1151 97th Street, Bay Harbor, Florida 33154. Therefore, Lezer is a citizen of Delaware and Florida for purposes of diversity jurisdiction. Lezer is a medical supplies distributor that acquires comprehensive quality medical supplies from suppliers and distributes them to healthcare businesses around the country.

2. Grady is an individual who resides in the state of Maine at a residence, upon information and belief, located at 86 Rockland Ave, Portland ME 04102. Therefore, Grady is a citizen of Maine for purposes of diversity jurisdiction.

3. Noble is a limited liability company organized under Maine law which does business under the assumed or fictitious name "Noble Medical Supply" and with a principal place of business located at 1148 Forest Ave, Portland, ME 04101. On information and belief, Noble's membership consists of at least Grady, therefore, Noble is a citizen of Maine for purposes of diversity jurisdiction. Noble officially holds itself out as a medical supplies supplier that conducts business in the state of Florida, including contracting with Lezer for the provision of certain medical supplies, which are the subject matter of this Complaint.

4. This Court has diversity jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds $75,000.00, exclusive of interest and costs, and the citizenship of each of the Defendants is diverse from the citizenship of Lezer.

5. This Court has personal jurisdiction over the Defendants, and venue is proper in this Court under 28 U.S.C. 1391(b), because the Defendants transact business in the state of Florida which is not isolated, including contracting with Lezer for the provision of certain medical supplies, which are the subject matter of this Complaint.

## FACTUAL BACKGROUND

6. In response to the COVID-19 pandemic, around the beginning of May of 2020, Grady began negotiating on behalf of Noble with a principal of Lezer to supply Lezer with certain 70% Isopropyl Pharma-C-Wipes (the "Alcohol Wipes"). These were to be used to supply Lezer's own customers, all of whom were medical companies desperately trying to locate medical supplies to fight the COVID-19 outbreak.

7.      Soon thereafter, on May 8, 2020, Noble and Lezer corresponded by phone and e-mail and subsequently entered into an agreement (the "Agreement"), whereby Noble would supply Lezer with 216,000 units of the Alcohol Wipes by May 18, 2020.  In exchange, Lezer would pay Noble $432,000, with 25% ($108,000) first due as a deposit (the "Deposit"), with the balance due upon delivery of all 216,000 units of the Alcohol Wipes.

8.      Pursuant to the Agreement, the Deposit would be returned if Noble did not materially fulfill the order as Noble had promised.

9.      On May 11, 2020, the next business day after the parties had entered into the Agreement, Lezer wired the Deposit of $108,000 to Noble.

10.     However, despite Noble's obligation to deliver the 216,000 units of Alcohol Wipes by May 18, 2020, Noble delivered a total of only 14,400 units of Alcohol Wipes, or approximately 5% of what was supposed to be delivered pursuant to the Agreement.

11.     To be sure, as a distributor, Lezer already had contracts to supply the Alcohol Wipes to its own customers.  Noble's delivery of a paltry fraction of its total promised amount immediately frustrated Lezer's agreements with its customers, caused Lezer significant losses as these customers canceled their orders and sought these badly needed supplies elsewhere, and jeopardized the health of all those affected by COVID-19 who depend on Lezer's customers (and thereby on Lezer).

12.     Absolutely shocked at the paucity of the amount delivered, Lezer immediately inquired with Grady regarding the status of the remaining nearly 95% of the promised order. Grady was not even apologetic, and instead offered Lezer only stall tactics and false promises regarding shortly providing delivery.

13.     However, with no delivery made more than two weeks later, by June 4, 2020, Lezer understood that Noble had no intention of delivering the vast balance of Alcohol Wipes.

Given the significant losses Lezer had already sustained due to Noble's failure, Lezer demanded that Noble give the Deposit back.

14. However, Noble refused, and still offered only further stall tactics and false promises.

15. After communicating back and forth with each other but getting nowhere, Lezer tried one last-ditch formal effort to obtain the Deposit back. Lezer sent Grady an official demand letter on June 10, 2020, a true copy of which is attached hereto as **Exhibit "A"** (the "Demand Letter").

16. However, Grady and Noble ignored the Demand Letter, and failed and refused to return the Deposit.

17. Since sending the Demand Letter, Lezer has learned that, nearly a year earlier, on June 6, 2019, Grady was indicted in Cumberland County Superior Court in Maine on criminal charges of securities fraud, theft by deception, and selling securities without a license. A copy of the indictment is attached hereto as **Exhibit "B"**.

18. Prior to entering into the Agreement, Grady did not disclose to Lezer that he had been indicted for fraud.

19. On information and belief, Grady ran Noble and its affiliated business entities as mere fronts and alter-egos to advance his criminal fraud enterprise and hide his identity.

20. Lezer appears to be only the latest victim in Grady's criminal schemes, this time focused on capitalizing on the COVID-19 pandemic. Indeed, based on media reports, information, and belief, Grady has sought to defraud other panicked, supply-strapped healthcare companies out of millions of dollars by promising delivery of significant quantities of critically needed medical supplies with no intention whatsoever of following through on delivery. All to

the oftentimes deathly detriment of the infected patients who are depending on these supplies to reach their medical providers.

21. The Deposit of $108,000 is still wrongfully retained by Noble and/or Grady as of today.

22. On June 25, 2016, Plaintiff served Defendants with a statutory Civil Theft Notice pursuant to Florida Statute § 772.11 (the "Civil Theft Letter"), demanding that the Defendants repay the monies improperly retained by the Defendants, a true copy of which is hereto as composite **Exhibit "C"**.

23. To date, both Grady and Noble have ignored the Civil Theft Letter, and failed and refused to return the Deposit.

24. All conditions precedent to the filing of this action have been performed, have occurred, have been waived, or have otherwise been excused or would be futile.

## COUNT I
## BREACH OF CONTRACT
*(Against Noble)*

25. Lezer realleges and incorporates by reference herein the allegations of paragraphs 1 through 24 as if fully rewritten herein.

26. For good and sufficient consideration, Lezer entered into the Agreement with Noble, wherein the parties agreed that Lezer initially would provide the Deposit and pay the balance of the purchase price upon delivery of the 216,000 units of Alcohol Wipes. In exchange, Noble agreed to provide full and timely delivery of the 216,000 units of Alcohol Wipes, and if not, to timely return the Deposit. The Agreement is a valid and enforceable contract.

27. Lezer fully performed by timely providing the Deposit to Noble.

28. However, Noble materially breached the Agreement by failing to deliver all 216,000 Alcohol Wipes, instead delivering y 14,400 (or about 5%) of them.

29. Noble further materially breached by failing to return the Deposit back to Lezer after demand, despite Noble's agreement to do so if it did not perform its obligations under the Agreement.

30. Even after Lezer sent the Demand Letter, Noble still has not delivered the promised Alcohol Wipes, nor has it returned the Deposit.

31. Noble's breach of contract has caused damage to Lezer in the form of a yet-to-be specified amount of lost profits with its customers who were counting on Lezer's delivery of the Alcohol Wipes for its own patients, and specifically the $108,000 Deposit.

32. Therefore, Noble is liable to Lezer for breach of the Agreement.

**WHEREFORE**, Lezer requests an entry of judgment in its favor against Noble on Count I – Breach of Contract, awarding the following relief:

a) an award of compensatory damages against Noble in an amount to be determined, in addition to all applicable interest and attorneys' fees and other legal costs;

b) punitive damages; and

c) any such other and further relief as the Court may deem just and equitable.

### COUNT II
### CONVERSION
*(Against Noble and Grady)*

33. Lezer realleges and incorporates by reference herein the allegations of paragraphs 1 through 24 as if fully rewritten herein.

34. This is an action for conversion against Noble and Grady to recover the Deposit owed to Lezer.

35. Given that Noble did not fulfill its end of the Agreement when it failed to deliver the 216,000 Alcohol Wipes it had promised, Lezer has full ownership rights in the Deposit or a right to possession of it.

36. Noble and Grady have effectively stolen the Deposit and wrongfully assert an act of dominion and control over the Deposit.

37. Despite demand, Noble and Grady have failed and refused to return the Deposit to Lezer.

38. Noble's refusal to return the Deposit despite the Demand Letter's request for the same constitutes a wrongful act by Noble, inconsistent with Lezer's property rights in the Deposit.

39. Noble and Grady's unlawful and unauthorized acts have permanently deprived Lezer of its ownership in the Deposit.

40. As a result of Noble and Grady's actions, Lezer has suffered damages in the amount of $108,000 due to Noble's refusal to return the Deposit.

41. Therefore, Noble is liable to Lezer for Conversion.

**WHEREFORE**, Lezer requests an entry of judgment in its favor against Noble and/or Grady on Count II – Conversion, awarding the following relief:

a) an award of compensatory damages against Noble in an amount of $108,000, in addition to all applicable interest and attorneys' fees and other legal costs;

b) punitive damages; and

c) any such other and further relief as the Court may deem just and equitable.

### COUNT III
### FRAUD
*(Against Noble and Grady)*

42. Lezer realleges and incorporates by reference herein the allegations of paragraphs 1 through 24 as if fully rewritten herein.

43. Grady made a false statement of material fact when he promised Lezer that Noble would deliver the 216,000 units of Alcohol Wipes pursuant to the Agreement.

44. Grady knew that this statement was untrue at the time he said it, as he was advancing a criminal enterprise, described above, and had no intention of delivering the 216,000 Alcohol Wipes pursuant to the Agreement.

45. When Grady stated that Noble would deliver the 216,000 Alcohol Wipes to Lezer, Grady's intention was actually to dupe Lezer into giving him and/or Noble the Deposit.

46. Presuming Grady and Noble were honest, and without any indication to the contrary, Lezer justifiably had confidence in the veracity of Grady's false statement that Noble would deliver the 216,000 Alcohol Wipes pursuant to the Agreement.

47. Additionally, Grady failed to disclose the material fact that he had been indicted on criminal fraud claims nearly a year prior to entering into the Agreement with Lezer.

48. Grady knew or should have known that the material fact of his indictment should be disclosed to Lezer before the parties entered into the Agreement.

49. Grady further knew that his failure to disclose this material fact would induce Lezer to act by entering into the Agreement generally and giving over the Deposit specifically, incorrectly thinking that there was no reason to suspect that Noble and Grady were dishonest.

50. Grady had a duty to disclose that he had been indicted on fraud charges to Lezer prior to entering into the Agreement.

51. Grady's failure to disclose that he had been indicted left Lezer with the inaccurate presumption that Grady personally and Noble generally could be trusted, and Lezer detrimentally relied on this misinformation when it chose to enter into the Agreement generally and give over the Deposit specifically.

52. As a result of each of: (i) Grady's false statement of one material fact, and (ii) his failure to disclose another material fact, Lezer was damaged in the amount of the Deposit, $108,000.

53. Therefore, Noble and/or Grady are liable to Lezer for fraud.

**WHEREFORE**, Lezer requests an entry of judgment in its favor against Noble and/or Grady on Count III – Fraud, awarding the following relief:

  a. an award of compensatory damages against Noble in an amount of $108,000, in addition to all applicable interest and attorneys' fees and other legal costs;

  b. punitive damages; and

  c. any such other and further relief as the Court may deem just and equitable.

### COUNT IV
### UNJUST ENRICHMENT
*(Against Noble and Grady)*

54. Lezer realleges and incorporates by reference herein the allegations of paragraphs 1 through 24 as if fully rewritten herein.

55. Should for any reason it be determined that the Agreement is not an enforceable contract, in the alternative, Lezer argues the following:

56. Noble and/or Grady received all or portions of the Deposit under circumstances which require Defendants to return to Lezer the amounts they received.

57. Pursuant to the Agreement, Lezer conferred a benefit onto Noble and/or Grady in the form of providing the $108,000 Deposit.

58. Noble and/or Grady knowingly and voluntarily accepted, took possession of and retained the Deposit.

59. Noble and/or Grady each knowingly and voluntary accepted and retained the monetary benefits conferred by the Deposit.

60. Given Noble's and/or Grady's underlying intent to defraud Lezer, and definitely not to honor the commitments of the Agreement, such acceptance and retention violates the fundamental principles of justice, equity, and good conscience.

61. Therefore, Noble and Grady have been unjustly enriched.

62. As a result of Defendants' actions, Lezer has suffered damages.

**WHEREFORE**, Lezer requests an entry of judgment in its favor against Noble and/or Grady on Count IV – Unjust Enrichment, awarding the following relief:

   a. an award of compensatory damages against Noble in an amount of $108,000, in addition to all applicable interest and attorneys' fees and other legal costs;

   b. punitive damages; and

   c. any such other and further relief as the Court may deem just and equitable.

### COUNT V
### PIERCING THE CORPORATE VEIL
*(Against Noble and Grady)*

63. Lezer realleges and incorporates by reference herein the allegations of paragraphs 1 through 24 as if fully rewritten herein.

64. On information and belief, Grady operated and otherwise treated Noble as an alter ego and/or mere instrumentality in committing the fraud described herein. Thus, Lezer is entitled to pierce the corporate veil of Noble to reach the assets of Grady.

65. For all purposes, Noble and Grady were single economic entities. Grady is the purported owner and controlled of Noble.

66. Specifically, Noble is not separate in any way from Grady. Indeed, Grady established Noble solely to thinly mask his personal criminal history of fraud and his current fraudulent activities in order to dupe healthcare companies into paying him for badly needed medical supplies to fight the COVID-19 pandemic, without any intention to make his promised deliveries. In essence, Grady dominated and controlled Noble to such an extent that Noble's ostensible independent existence was in reality nonexistent, and Grady was in fact the alter ego of Noble.

67. On information and belief, Grady disregarded the corporate formalities of Noble.

68. Grady improperly and deliberately used Noble as a mere sham to advance his criminal enterprise and defraud Noble's "customers".

69. This improper use of Noble was the proximate cause of Lezer's loss of the Deposit and all of Lezer's lost profits with its customers who were depending on the Alcohol Wipes that Grady had no intention of causing Noble to deliver.

70. Therefore, the corporate veil of Noble should be pierced to reach Grady's personal assets.

**WHEREFORE**, Lezer requests an entry of judgment in its favor against Noble and Grady on Count V – Pierce the Corporate Veil, ruling that:

  a. Grady is the alter-ego of Noble;

  b. compensatory damages in amount to be determined later;

  c. statutory interest and reasonable attorney fees and other legal costs;

  d. punitive damages;

  e. and any such other and further relief as this Court may deem just and equitable.

### COUNT VI
### CIVIL CONSPIRACY
*(against Noble and Grady)*

71. Lezer realleges and incorporates by reference herein the allegations of paragraphs 1 through 24 as if fully rewritten herein.

72. By the conduct described herein, Noble and Grady have combined and conspired among themselves and other known conspirators for the purpose of willfully and maliciously injuring Plaintiff.

73. Noble and Grady agreed and conspired amongst themselves to convert Lezer's funds for their own benefit without any authority or authorization from Lezer.

74. Noble and Grady both knew of and participated in the theft and conversion of Lezer's property by retaining the Deposit and, upon belief, utilizing the funds for their own personal benefit.

75. As a direct and proximate result, Lezer has been damaged.

**WHEREFORE,** for the reasons set forth above, Lezer demands judgment against Noble and Grady in an amount to be determined at trial, plus interest thereon, attorneys' fees and costs, and such other and further relief as the Court deems just and proper.

## COUNT VII
## CONSTRUCTIVE TRUST
*(against Noble and Grady)*

76. Plaintiff adopts and realleges each and every allegation contained in Paragraphs 1 through 24 above as if specifically set forth herein.

77. Should for any reason it be determined that the Agreement is not an enforceable contract, in the alternative, Lezer argues the following:

78. This is an action in equity against Noble and Grady to recover the proceeds of the Deposit owed to Lezer.

119. Defendants have acquired possession of the funds from the Deposit through fraud, as more particularly described above.

120. Defendants have engaged in the type of conduct which warrants the imposition of a constructive trust on any funds which remain in the Defendants' possession from the Defendants' wrongful retention of the Deposit.

121. Defendants' continued possession or retention of any funds derived from the Deposit is against equity as they have no right or title to said funds.

122. Defendants' continued possession or retention of any funds derived from the Deposit continue to unjustly enrich the Defendants.

123. Equity also warrants the imposition of a constructive trust on any property which was purchased only as a consequence of having the funds received from the Deposit and which was transferred to the Defendants or any third-party transferor in an attempt to hide the funds from Plaintiff.

**WHEREFORE,** for the reasons set forth above, Plaintiff requests that all the bank accounts and assets of Noble and Grady, including any property purchased using proceeds from the Deposit, be held in a constructive trust for the Plaintiff, to the extent of the funds taken by the Defendants and to the extent of any benefit conferred on any of the individual Defendants pursuant to the theft, conversion and civil conspiracy to commit conversion made in this Complaint, and such other and further relief as the Court deems just and proper.

**COUNT VIII**
**CIVIL THEFT – FLA. STAT. § 772.11**
*(against Noble and Grady)*

124. Plaintiff adopts and realleges each and every allegation contained in Paragraphs 1 through 24 above as if specifically set forth herein.

125. This is an action for relief against Noble and Grady pursuant to the provisions of Fla. Stat. § 772.11.

126. The Defendants unlawfully and knowingly obtained or used (as defined by Fla Stat. § 812.014(1)(a) and (b)) the property of Plaintiff (*e.g.,* the Deposit) with the intent to permanently or temporarily deprive the Plaintiff of such money in violation of Fla. Stat. § 812.014(1)(a).

127. The Defendants unlawfully and knowingly obtained or used (as defined by Fla Stat. § 812.014(1)(a) and (b)) the property of Plaintiff (*e.g.,* the Deposit) with the intent to permanently or temporarily appropriate the money for their own use, in violation of Fla. Stat. § 812.014(1)(b).

128. The Defendants did not earn the proceeds of the Deposit.

129. The facts alleged herein demonstrate that the Plaintiff has a clear legal right to recovery based on the merits of its claim that Defendants violated Fla. Stat. § 812.014

130. Pursuant to Fla. Stat. § 772.11, Plaintiff made written demand to Defendants for treble damages. *See* **Exhibit "C".**

131. To date, Defendants have not complied with the written demand within thirty (30) days after receipt of the Civil Theft Letter, as required by statute.

132. The Defendants' actions in failing to account for and deliver treble the balance of the Deposit constitutes civil theft.

133. As a direct and proximate result of the Defendants' civil theft of the Deposit, Plaintiff has suffered substantial damages and is entitled to have such damages trebled pursuant to Fla. Stat. § 772.11.

**WHEREFORE,** for the reasons set forth above, Plaintiff demand judgment against Defendants, Noble and Grady, for compensatory damages, an award of treble damages for an amount to be proved at trial, plus prejudgment interest, reasonable attorneys' fees and costs pursuant to Fla. Stat. § 772.11, and such other and further relief as the Court deems just and proper.

Dated: August 4, 2020                    Respectfully submitted,

**READ LAW PLLC**
25 SE 2nd Avenue, Eighth Floor
Miami, Florida 33131
Phone: (305) 209-2131
asr@alexisreadlaw.com

By: */s/ Alexis S. Read*
Alexis S. Read, Esq.
Fla. Bar No. 98084

<u>/s/ Aharon S. Kaye</u>
Aharon S. Kaye
Il. Bar No. 6291684
Noah Siegel
Il. Bar No. 6327603
**GUTNICKI LLP**
*Pro Hac Vice Admission Pending*
4711 Golf Road, Suite 200
Skokie, Illinois 60076
Telephone: (847) 745-6594
akaye@gutnicki.com
nsiegel@gutnicki.com

*Attorneys for Lezer Corp*
