IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 1:20-civ-23235-Scola

LEZER CORP.
a Delaware corporation,

        Plaintiff,

v.

NOBLE PARTNERS LLC,
a Maine limited liability company, d/b/a
NOBLE MEDICAL SUPPLY;
SEAN GRADY, an individual,

        Defendants.

_____/

**PLAINTIFF'S VERIFIED MOTION FOR PREJUDGMENT
WRIT OF ATTACHMENT OF DEFENDANTS' ASSETS AND PRELIMINARY
INJUNCTION, AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff, LEZER CORP., a Delaware corporation ("Lezer"), by and through its undersigned attorneys, and pursuant to Fed.R.Civ.P. 64 and 65, hereby moves for entry of a Prejudgment Writ of Attachment of the assets of Defendants, NOBLE PARTNERS LLC ("Noble") and SEAN GRADY ("Grady") (collectively, the "Defendants"), pursuant to Sections 76.04 and 77.031, Florida Statutes, and in support thereof states as follows:

**FACTUAL BACKGROUND**

1.    For a full recitation of the facts serving as the grounds for the issuance of an order of a Prejudgment Writ of Attachment, the Court's attention is respectfully directed to the facts stated in Lezer's Complaint, which was originally filed with the Court on August 4, 2020, and was amended on August 13, 2020 [ECF 8] (the "Amended Complaint"). In the

interest of brevity, all the facts cited therein are not repeated herein, but rather are incorporated by reference herein and made a part hereof. Nonetheless, the most relevant facts are summarized below:

2. In response to the COVID-19 pandemic, around the beginning of May of 2020, Grady began negotiating on behalf of Noble with a principal of Lezer to supply Lezer with certain 70% Isopropyl Pharma-C-Wipes (the "Alcohol Wipes").

3. Soon thereafter, on May 8, 2020, Noble and Lezer entered into an agreement (the "Agreement"), whereby Noble would supply Lezer with 216,000 units of the Alcohol Wipes by May 18, 2020. In exchange, Lezer would pay Noble $432,000, with 25% ($108,000) first due as a deposit (the "Deposit"), with the balance due upon delivery of all 216,000 units of the Alcohol Wipes.

4. Pursuant to the Agreement, the Deposit would be returned if Noble did not materially fulfill the order as Noble had "promised."

5. On May 11, 2020, Lezer wired the Deposit of $108,000 to Noble.

6. However, Noble thereafter delivered a total of only 14,400 units of Alcohol Wipes, or approximately 5% of what was "promised."

7. When asked where the remaining 95% of the "promised" order was, Grady offered Lezer only stall tactics regarding shortly providing delivery.

8. When no delivery was made within the next two weeks, and no legitimate explanation offered as to why, Lezer understood that Noble had no intention of delivering the vast balance of Alcohol Wipes, and demanded the Deposit back.

9. However, Noble refused, and still offered only further stall tactics.

10. Lezer subsequently learned that, nearly a year earlier, on June 6, 2019, Grady was <u>indicted</u> in Cumberland County Superior Court in Maine on <u>criminal</u> charges of securities fraud, theft by deception, and selling securities without a license. This had not been disclosed to Lezer at any point.

11. Indeed, Grady was clearly running Noble and its affiliated business entities as mere fronts and alter-egos to extend his criminal fraud enterprise and conceal his identity. Based on media reports, information, and belief, Grady has sought to defraud other panicked, supply-strapped healthcare companies out of millions of dollars by promising delivery of significant quantities of critically needed medical supplies with no intention whatsoever of ever following through on delivery. Lezer is likely only one of many other victims of Grady's criminal machinations.

12. The Deposit of $108,000 is still wrongfully retained by Noble and/or Grady as of today.

## SUPPORTING MEMORANDUM OF LAW

13. This Court, pursuant to its equitable powers and Rule 64 of the Federal Rules of Civil Procedure, is authorized to freeze the Defendants' assets pending a permanent resolution of the case. *See Levi Strauss & Co. v. Sunrise Int'l Trading, Inc*., 51 F.3d 982, 986-87 (11th Cir. 1995); *United States v. Oncology Assocs., P.C*., 198 F.3d 489, 496-97 (4th Cir. 1999). "That money damages are claimed along with equitable relief does not defeat the district court's equitable powers." *Oncology Assocs*., 198 F.3d at 499 (citing *Levi Strauss* and granting an asset freeze even though money damages were also sought). Furthermore, Rule 64 provides that attachment is available "under the circumstances and in the manner provided by the law of the state in which the district court is held." Fed.R.Civ.P. 64.

14. In addition, pursuant to Fed.R.Civ.P. 65, Lezer seeks a preliminary injunction enjoining Defendants from transferring or otherwise divesting any assets traceable to the Deposit.

15. A prejudgment writ of attachment "serves as a lien upon property which may be the subject of execution upon a later-obtained judgment." *Cerna v. Swiss Bank Corp. (Overseas) S.A.*, 503 So.2d 1297, 1298 (Fla.3d DCA 1987) (citation omitted). Pursuant to Chapter 76, Florida Statutes, a creditor-plaintiff is entitled to a writ of attachment upon a debt actually due by a defendant, if the defendant will fraudulently part with the property before judgment can be obtained against him, resides out of state, is absconding, is secreting the property, or is fraudulently disposing of the property. *See* Fla. Stat. § 76.04(1), (4), (7), (9), and (10); *see also* Fla. Stat. § 726.108 (providing for attachment or other provisional remedy against an asset that is transferred fraudulently). A verified motion, or motion supported by affidavit, setting forth these allegations is sufficient to obtain a prejudgment writ of attachment under Section 76.04. *See Rodriguez v. Banco Indus. De Venezuela*, 576 So.2d 870 (Fla. 3d DCA 1991).

16. It is well settled under Florida law that entry of a prejudgment writ of attachment is appropriate if a debtor-defendant is fraudulently disposing of property or otherwise secreting it to avoid payment of a debt due and owing. *See Cerna*, 503 So.2d at 1298. A writ of attachment is also available against assets fraudulently transferred from a debtor-defendant and held in the name of another individual or entity. *See Rodriguez*, 576 So.2d at 873; *Cerna*, 503 So.2d at 1298 ("prejudgment attachment is available against assets which are held in the name of another and which have either been fraudulently transferred from the debtor… or remain equitably owned by him.")(citations omitted). Furthermore, even

if assets are formally titled in the name of a third party, a writ of attachment is an appropriate remedy if those assets remain the actual assets of the debtor-defendant. *See Rodriguez,* 576 So.2d at 873.

17. Florida courts have upheld the issuance of writs of garnishment to seize funds prior to judgment on facts similar to the present case. *See, e.g.*, *Marshall-Shaw v. Ford,* 755 So.2d 162, 165 (Fla. 4th DCA 2000) (upholding trial court's finding that the plaintiff's unjust enrichment claim properly formed the bases for the issuance of prejudgment writs of garnishment); *Garel and Jacobs P.A. v. Wick,* 683 So.2d 184, 186 (Fla. 3d DCA 1996) (court held that prejudgment writs of garnishment could be issued in alleged quasi-contract claims); *Barbouti v. Lysandrou,* 559 So.2d 648 (Fla. 3d DCA 1990) (court found that prejudgment garnishment writ properly lies when there is a claim regarding the breach of an express and/or implied contract).

18. Clearly in this case, a prejudgment writ of attachment is appropriate against Noble and Grady: Lezer has established an incontrovertible debt (the Deposit) that is due and owing, and which neither Noble nor Grady can in good faith deny. Moreover, given the utter paucity of Noble's delivery of a mere 5% the total Alcohol Wipes that was "promised", the utter lack of effort to explain why the remaining 95% was not timely delivered when "promised" and why the same still has not been delivered even to this day, Grady's putative criminal history of defrauding those who give him money, and the contemporaneous reports that Lezer is only the latest victim of Grady's putative criminally fraudulent enterprise to capitalize on others in Lezer's dire position — all this is blatantly indicative of Noble's and Grady's nefarious intent behind this entire series of events. Indeed, every indication point to

this entire series of events being the direct manifestation of Noble and Grady's scheme simply to defraud Lezer of the Deposit.

19. Further, prejudgment attachment is warranted because Lezer seeks the equitable relief of a constructive trust in additional to a legal remedy. *See Levi Strauss,* 51 F.3d at 987; *See* Am. Compl. ¶¶ 77-123 (sic). "A request for equitable relief invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Id.* When the plaintiff seeks, "among other things, the imposition of a constructive trust," restrictive restraints upon the dissipation of property are appropriate. *Castillo v. Vlaminch de Castillo*, 701 So.2d 1198, 1199 (Fla. 3d DCA 1997) (ruling that property was properly restrained pending a final determination of the action).

20. Moreover, "[t]he doctrine of constructive trusts is a recognized tool of equity designed in certain situations to right a wrong committed and to prevent unjust enrichment of one person at the expense of another either as a result of fraud, undue influence, abuse of confidence or mistake in the transaction." *In re Fin. Federated Title and Trust, Inc.,* 347 F.3d 880, 891 (11th Cir. 2003) (citations omitted). "A constructive trust remains an equitable remedy 'even though it might ultimately reach a fund of money.' " *Oncology Assocs.*, 198 F.3d at 498 (citation omitted). The Court thereby may impose a constructive trust on any fraudulently conveyed assets traceable to the Deposit. *In re Fin. Federated*, 347 F.3d at 891 (holding that "[t]raceable proceeds from prior fraudulent transfers . . . may also be subject to a constructive trust") (citing *In re* Lapes, 254 B.R. 501, 508 (S.D.Fla.2000)). Defendants, individually and through entities controlled by them, defrauded Lezer of its funds;

consequently, a prejudgment writ of attachment of the proceeds is equitable and appropriate to restrain any dissipation of the property.

21. Additionally, a prejudgment writ of attachment is proper because Lezer seeks to hold the Defendants jointly and severally liable for conversion and the amounts claimed are ascertainable. Indeed, attachment is proper if the debt is liquidated and "ascertained or ascertainable by simple computation, or by reference to generally recognized standards." *Marshall-Shaw*, 755 So.2d at 162 (accepting attorney's testimony regarding the value of the stolen property). The Court in *Marshall-Shaw* granted prejudgment writs of attachment on the defendant's "land, tenements, goods, and chattels." *Id.* It is clear from the allegations made in the Amended Complaint that the still unreturned Deposit totals $108,000; therefore, the debt owed to Lezer is a liquidated claim, ascertainable by simple computation and, as such, prejudgment attachment is proper. *See* Am. Compl. ¶¶ 8, 10.

22. Finally, a prejudgment writ of attachment should be granted because Lezer seeks to freeze assets that are directly related to the underlying litigation. *See Levi Strauss*, 51 F.3d at 987. Indeed, "when the plaintiff creditor asserts a cognizable claim to specific assets of the defendant or seeks a remedy involving those assets, a court may in the interim invoke equity to preserve the *status quo* pending a judgment where the legal remedy might prove inadequate and the preliminary relief furthers the court's ability to grant the final relief requested." *Oncology Assocs.,* 198 F.3d at 496. Further, "[t]his nexus between the assets sought to be frozen through an interim order and the ultimate relief requested in the lawsuit is essential to the authority of a district court in equity to enter a preliminary injunction freezing assets." *Id*. at 496-97. *In Levi Strauss*, the Eleventh Circuit recognized a District Court's authority to freeze assets "which could have been used to satisfy an equitable award." *Levi*

*Strauss & Co*, 51 F.3d at 987; *see also Commodity Futures Trading Comm'n v. Kimberlynn Creek Ranch, Inc*., 276 F.3d 187, 193 (4th Cir. 2002) (holding that orders on preliminary relief, including an asset freeze, may be directed "against a custodian of the defendant's assets."). Here, Lezer seeks equitable remedies in addition to its legal claims. Further, Noble is one of the specific vehicles that the Defendants used to divert Lezer's funds. Therefore, Lezer seeks to freeze all bank accounts in Defendants' possession in order to protect a future money judgment, which can be accomplished only through the issuance of a prejudgment writ of attachment of the same.

23. Indeed, there is presently a real and grave risk that Noble's and Grady's dishonesty will only continue, irrespective of the filing of the Amended Complaint and the forthrightness due to this Court. To wit, the risk is that, before any judgment can be obtained against them in this lawsuit, and in advance of their criminal activity, Defendants will attempt to fraudulently part with, abscond with, secrete, or otherwise fraudulently dispose of, any and all property traceable from the Deposit to shield those very same assets from collection. This would verily leave Lezer with nothing to collect from Noble and Grady, even when Lezer prevails on its incontestable claims against them. Further, Grady resides out of state, at 86 Rockland Ave, Portland, ME 04102 and/or 12 Well Stone, Portland, ME 04103, and Noble's members are Grady and Daniel Mickool, none of whom resides in Florida.

24. Accordingly, Lezer is entitled to a prejudgment writ of attachment and preliminary injunction based upon the pattern of misleading and fraudulent behavior of Grady and the companies under his control, such as Noble. Given Grady's criminal history of defrauding creditors, this Motion and its desired remedy are indeed critical to Lezer's

recovery in order to prevent Defendants from siphoning off assets and causing irreparable harm to Lezer thereby.

**RELIEF REQUESTED**

25. Consequently, Lezer requests entry of a Prejudgment Writ of Attachment pursuant to Fla. Stat. §§ 76.04 and 77.031 on each of Noble's and Grady's assets, and a preliminary injunction pursuant to Fed.R.Civ.P. 65 enjoining Defendants from transferring or otherwise divesting any assets traceable to the Deposit.

26. Lezer further requests that the Court order the United States Marshals Service to take into custody such assets.

27. Lezer also requests that the Court order all of Noble's and Grady's bank accounts be frozen, and that they surrender all checks, registries, and passbooks to the United States Marshals Service.

28. Lezer is aware of the procedural requirements contained in Fla. Stat. §§ 76.12 and 77.031(3) requiring a bond equal to a sum twice the amount claimed in the application for attachment – Lezer thereby stands ready, willing, and able to post such a bond with surety to be approved by the Clerk.  However, pursuant to Fed.R.Civ.P. 65(c), Lezer should be made to post only a nominal bond as security for this writ of attachment.  Indeed, the state law procedural requirements contained in the Florida Statutes have no applicability to this Court. Specifically, although Fed.R.Civ.P. 64(a) incorporates *state substantive* law as to the remedies available for a prejudgment seizure of property, it also states that "federal statute governs to the extent it applies." Fed.R.Civ.P. 64(a).  In addition, the Advisory Committee Notes to Fed.R.Civ.P. 64 state that "[f]ormer Rule 64 stated that the Civil Rules govern an action in which any remedy available under Rule 64(a) is used. . . . These provisions are deleted as

redundant." Therefore, the procedural law applicable to attachment cases in the District Court is governed by Fed.R.Civ.P. 65(c), which states that the court may issue a provisional remedy based on security "in an amount that the court considers proper to pay the costs and damages" that might be caused by improper application of the Rule.

29.  As stated previously, all parties are placed on notice of the impropriety of Defendants' conduct in this matter. In addition, Lezer will be subject to great harm should the Defendants be permitted to deplete or conceal their assets. Further, given Lezer's high likelihood of success on the merits, it is unlikely that prosecution of this writ of attachment will cause Defendants undue harm. Therefore, Lezer's request for a nominal bond as security is reasonable.

**WHEREFORE,** for the reasons set forth above, Lezer respectfully request that the Court enter a Prejudgment Writ of Attachment pursuant to Chapters 76 and 77, Florida Statutes, and a preliminary injunction pursuant to Fed.R.Civ.P. 65 against NOBLE PARTNERS LLC, d/b/a NOBLE MEDICAL SUPPLY and SEAN GRADY, freeze their bank accounts, and command the United States Marshals Service to take possession of all their assets and all related checks, registries, and passbooks.

## VERIFICATION

I, Jeff Pollack, CEO of Lezer Corp., do hereby affirm that I have read the foregoing Motion, and that the facts contained herein are true and correct.

[Notarization]

YANNISS A MINAYA
Notary Public – State of Florida
Commission # GG 088007
My Comm. Expires Mar 28, 2021
Bonded through National Notary Assn.

Jeff Pollack

Dated: September 3, 2020                    Respectfully submitted,

**READ LAW PLLC**
25 SE 2nd Avenue, Eighth Floor
Miami, Florida 33131
Phone: (305) 209-2131
asr@alexisreadlaw.com

By: */s/ Alexis S. Read*
Alexis S. Read, Esq.
Fla. Bar No. 98084

/s/ Noah Siegel
Noah Siegel
Il. Bar No. 6327603
GUTNICKI LLP
*Pro Hac Vice Admission Pending*
4711 Golf Road, Suite 200
Skokie, Illinois 60076
Telephone: (847) 745-6594
akaye@gutnicki.com
nsiegel@gutnicki.com

*Attorneys for Lezer Corp.*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on September 3, 2020, a true and correct copy of the foregoing was served via e-mail to those parties required to receive e-mail service pursuant to Fla. R. Jud. Admin. 2.516, and/or by U.S. Mail to all parties on the CM/ECF Service List:

| | |
|---|---|
| Sean Grady | Noble Partners LLC |
| 86 Rockland Ave | d/b/a Noble Medical Supply |
| Portland, ME 04102 | Attn: Sean Grady, President |
| | 1148 Forest Ave |
| | Portland, ME 04101 |

By:    /s/ *Alexis S. Read*
          Alexis S. Read, Esq.
          Fla. Bar No. 98084